## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VIRGIN MOBILE USA IPO LITIGATION | Lead Case No. 1:07-CV-10589 (TPG) |
| | (Securities Class Action) |
| This Document Relates To: | ECF CASE |
| ALL ACTIONS | |

## AFFIDAVIT OF RICHARD A. SPEIRS IN SUPPORT OF MOTION
## OF ESPERANZA REYNOLDS AND REZA ZARR FOR
## APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL

STATE NEW YORK      )
                            ) ss
COUNTY OF NEW YORK  )

Richard A. Speirs, being duly sworn, deposes and says:

1.      I am a member of the firm of Zwerling, Schachter & Zwerling, LLP (the "Zwerling Firm"), one of the attorneys for Esperanza Reynolds and Reza Zarr (collectively, "Movants"). I am fully familiar with all the facts and circumstances herein.

2.      This affidavit is submitted in support of the motion by Movants pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for appointment of Lead Plaintiffs and Lead Counsel in the above-captioned action.

3.      Attached as Exhibit A is the complaint in *2 West, Inc. v. Virgin Mobile USA, Inc.,* No. 1:07-cv-11625 (UA) (S.D.N.Y.), filed on December 28, 2007.

4.      Attached as Exhibit B is the first notice of the filing of a class action relating to securities of Virgin Mobile USA, Inc. ("Virgin Mobile"), dated November 22, 2007, issued by Kahn, Gaulthier & Swick, LLC pursuant to the PSLRA.

5.      Attached as Exhibit C are the certifications of Movants in support of their Motion for Appointment of Lead Plaintiffs and Lead Counsel, including their transactions in Virgin Mobile securities.

6.    Attached as Exhibit D is a firm resume of Movants' choice for Lead

Counsel, the Zwerling Firm.

_____
Richard A. Speirs

Sworn to before me this
22nd day of January, 2008

_____
Notary Public

Sona Ramesh Shah
Notary Public, State of New York
No. 02SH6024033
Qualified in New York County
Commission Expires May 3, 20 11
June 26

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 2 WEST, INC., On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIRGIN MOBILE USA, INC., DANIEL H. SCHULMAN, JOHN D. FEEHAN, JR., LEHMAN BROTHERS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, and BEAR, STEARNS & CO. INC., <br><br> Defendants. | **ECF CASE** <br><br> **07 CV 11625 (UA)** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, 2 West, Inc., on behalf of itself and all others similarly situated, by its undersigned attorneys, alleges upon personal knowledge as to itself and its own acts, and information and belief as to all other matters, based upon, *inter alia,* the investigation conducted by and through its attorneys, which included, among other things, a review of public documents and announcements made by the defendants, Securities and Exchange Commission ("SEC") filings, news articles, analysts reports and press releases regarding Virgin Mobile USA, Inc. ("Virgin Mobile" or the "Company"), and plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action brought by plaintiff on behalf of itself and a Class consisting of all other persons and entities who purchased or acquired the publicly-traded common stock of Virgin Mobile pursuant or traceable to the Company's October 11,

2007 initial public offering of 27.5 million shares at $15.00 per share (the "IPO").  In connection with the IPO, defendants made materially false and misleading statements, or omitted to state other facts necessary to make the statements made not misleading, regarding the Company's business, revenue growth, and profitability.  As a result of its purchase of Virgin Mobile's common stock, plaintiff and other members of the class suffered damages.

## JURISDICTION AND VENUE

2.      The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§ 77k, 77l(a)(2) and 77o].

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

4.      Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c).  Many of the acts and transactions alleged herein occurred in part in this District.  Additionally, several defendants maintain executive offices in this District.

5.      In connection with the acts, transactions and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

## THE PARTIES

6.      Plaintiff, 2 West, Inc., purchased Virgin Mobile common stock pursuant or traceable to the IPO as detailed in the attached Certification and has been damaged thereby.

2

7.     Defendant Virgin Mobile is a provider of wireless communication services.  Virgin Mobile has targeted the youth market in the United States with flexible payment plans, including pre-paid, by-the-minute and month-to-month.

8.     Defendant Daniel H. Schulman ("Schulman") was, at all relevant times, Chief Executive Officer and a member of the Board of Virgin Mobile.  Schulman signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

9.     Defendant John D. Feehan, Jr. ("Feehan") was, at all relevant times, the Chief Financial Officer of Virgin Mobile.  Feehan signed the materially false and misleading Registration Statement filed with the SEC in connection with the IPO.

10.     Defendants Lehman Brothers Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Bear, Stearns & Co. Inc. (collectively, the "Underwriter Defendants") are registered broker-dealers and served as the lead underwriters of the IPO.  The Underwriter Defendants maintain their principal executive offices in this district and failed to perform, as required by the federal securities laws, adequate due diligence in connection with their roles of lead underwriters of the IPO.

11.     By reason of their management positions, and/or membership on the Board, and their ability to make public statements in the name of Virgin Mobile, Schulman and Feehan (collectively, "the Individual Defendants") were and are controlling persons, and had the power and influence to cause (and did cause) Virgin Mobile to engage in the unlawful conduct complained of herein.

12.     By reason of their positions with the Company, the Individual Defendants had access to internal Company documents, reports and other information, including the

adverse non-public information concerning the Company's IPO and business, and attended management and/or Board meetings. The Individual Defendants were responsible for the truthfulness and accuracy of the Company's public filings and press releases described herein.

13.     Virgin Mobile, and the Individual Defendants as officers and/or directors of a publicly-held company, had a duty to disseminate promptly truthful and accurate information with respect to the Company and to correct promptly any public filings or statements issued by or on behalf of the Company which had become false or misleading.

## SUBSTANTIVE ALLEGATIONS

### The IPO

14.     On or about October 11, 2007, Virgin Mobile sold 27.5 million shares of its common stock at $15.00 per share in the IPO. In connection with the IPO, the Company filed a Registration Statement and final Prospectus with the SEC on or about October 10, 2007 (the "Registration Statement/Prospectus"). In the IPO, the Company sold 25,467,160 shares and the remaining shares were sold by other shareholders.

15.     The Registration Statement/Prospectus stated that Virgin Mobile has "continued to grow [its] customer base rapidly," and that the Company "enjoys strong brand awareness." The Registration Statement/Prospectus stated, in relevant part:

> We were founded as a joint venture between Sprint Nextel and the Virgin Group and launched our service nationally in July 2002, reaching one million customers in November 2003, within eighteen months of our national launch. We have continued to grow our customer base rapidly and, as of December 31, 2006, we served approximately 4.57 million customers, which we estimate represented approximately a 15% share of the pay-as-you-go market and a 19.0% increase over the 3.84 million customers we served as of December 31, 2005. As of June 30, 2007, we served approximately 4.83 million customers.

4

16.     The Registration Statement/Prospectus also discusses several "risk factors" associated with purchase of the Company's shares.   One such risk factor discussed was the fact that the Company *may* experience significant fluctuations in revenues and cash flows.  The Registration Statement/Prospectus stated, in relevant part:

> We cannot be certain that our MVNO [mobile virtual network operator] business model or any specific products or services will be profitable or competitive in the long-term against larger, facilities-based wireless providers or other MVNOs. We also cannot predict whether our MVNO model will allow us to offer the wireless services that customers may demand in the future. We have experienced, and may continue to experience, significant fluctuations in our revenues and cash flows.

17.     In the Registration Statement/Prospectus, the Company discusses its "competitive strengths," among them are a differentiated market approach, strong brand, extensive and efficient distribution and a capital efficient business.   The Company also claimed in the Registration Statement/Prospectus that there is a "substantial demand" for the Company's services, stating that:

> We focus on two fast-growing segments of the U.S. wireless market: youth and pay-as-you-go. We believe there is substantial demand in the United States for our straightforward and fun wireless communication services. According to the Yankee Group, in 2006, there were approximately 29.5 million pay-as-you-go wireless customers in the United States and such number is expected to grow to approximately 53.0 million by 2011, representing a 12.4% compound annual growth rate over the same period. We plan to continue to penetrate the youth segment and grow our market share by continuing to tailor our products, services and advertising message to this market, leveraging our brand through new and existing distribution channels and utilizing select youth-oriented media channels that specifically resonate with our target market, such as MTV, Vice, Facebook.com, MySpace.com and outdoor billboards and postings in key trendsetting neighborhoods.

18.     The statements contained in ¶¶ 15-17 were materially false and misleading, or omitted to state other facts necessary to make the statements made not misleading, because:  (1) the Company had already suffered a larger than expected third

quarter loss for the period ended September 30, 2007 (which closed two weeks before the IPO); (2) the Company was experiencing weakening demand for its services at the time of the IPO; (3) the Company's cost structure at the time of the IPO was too high for the Company to operate profitably; and (4) that, as a result of the foregoing, the Registration Statement/Prospectus was false and misleading at all relevant times.

19.    Under applicable SEC rules and regulations, a registration statement is required to disclose known adverse trends in the issuer's business. Virgin Mobile did not disclose in the Registration Statement/ Prospectus that its net income and revenues for the third quarter 2007, ended on September 30, 2007, were weaker than expected.

**The Company Reports a Net Loss for its Third Quarter**

20.    On November 15, 2007, approximately one month after the IPO, Virgin Mobile announced earnings for the three month period ended September 30, 2007. The Company reported that its third-quarter loss widened to $7.3 million, compared with a loss of $5.1 million in the year-ago quarter. The Company also reported a pro-forma loss of $.15 cents per share, compared with a loss of $.10 cents per share in the year-ago period. Revenue rose year-over-year to $319.5 million from $271 million.

21.    On November 15, 2007, Virgin Mobile held a conference call to discuss its third quarter 2007 results. During the call, Schulman stated that "weakening" macroeconomic conditions will impact the Company's net services revenues for the rest of 2007. Schulman further stated that October was weaker than September, but since then the Company's operating results had "stabilized."

22.    On November 16, 2007, in a note to clients, Stanford Group Company analyst Michael Gary Nelson rated the stock a "Hold," citing increasing competition and

"weak" net customer additions. Also on November 16th, Soleil Securities Group analyst Todd Rethemeier reiterated his "sell" rating and $10 price target, saying that "2008 guidance seemed well below others' expectations."

23.    On November 16, 2007, shares of the Company's common stock declined approximately 15% to close at $9.19 per share.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities who purchased or acquired Virgin Mobile's publicly-traded common stock pursuant or traceable to the IPO and who suffered damages as a result of the defendants' improper conduct (the "Class"). Excluded are defendants, any entity in which defendants have a controlling interest or is a parent or subsidiary of or is controlled by the Company, and the officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns of defendants.

25.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes there are, at minimum, thousands of members of the Class who purchased Virgin Mobile's common stock pursuant or traceable to the IPO.

26.    Questions of law and fact are common to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

7

       b)     whether the Company issued false and misleading statements in connection with the IPO; and

       c)     whether plaintiff and the other members of the Class have suffered damages and, if so, in what amount;

27.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

28.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

**<u>NO SAFE HARBOR</u>**

30.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking

statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## COUNT I

## VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

31.     Plaintiff repeats and reiterates each and every allegation contained above, as if fully set forth herein.

32.     This claim is brought by plaintiff, on behalf of itself and other members of the Class, who purchased Virgin Mobile's common stock pursuant to the Registration Statement/Prospectus.   Each Class member acquired their shares pursuant to the Registration Statement/Prospectus.

33.     Defendants are liable under this claim because the Registration Statement/Prospectus contained untrue statements or omitted material facts required to be stated or necessary to make the statements not misleading.

34.     Virgin Mobile is the issuer of the stock sold via the Registration Statement/Prospectus.   As issuer of the stock, the Company is strictly liable to plaintiff and the Class for the material misstatements and omissions therein.

35.     The Individual Defendants, as signatories to the Registration Statement/Prospectus, as directors, and/or officers and controlling persons of the issuer, owed to the holders of the stock obtained through the Registration Statement/Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement/Prospectus at the time they become effective to ensure that such statements were true and correct and that there was no omission of material facts required

9

to be stated in order to make the statements contained therein not misleading. Defendants failed to exercise reasonable care in connection with issuing the Registration Statement/Prospectus for the IPO. As such, defendants are liable to the Class.

36.     The Underwriter Defendants were the lead underwriters of the Company's IPO and were required to investigate with due diligence the representations contained in the Registration Statement/Prospectus.

37.     None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement/Prospectus were true or that there was no omission of material facts necessary to make the statements made therein not misleading.

38.     Defendants issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of, material misstatements to the investing public which were contained in the Registration Statement/Prospectus, which misrepresented or failed to disclosed, *inter alia*, the facts set forth above. By reason of the conduct herein alleged, each defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

39.     At the time they obtained their shares of Virgin Mobile, the plaintiff and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

40.     This action is brought within one year after discovery of the untrue statements and omissions in the Registration Statement/Prospectus and within three years of the effective date of the Registration Statement/Prospectus.

41.     By virtue of the foregoing, plaintiff and the other members of the class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from defendants and each of them, jointly and severally.

## COUNT II

## VIOLATIONS OF SECTION 12(a)(2) OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

42.     Plaintiff repeats and reiterates each and every allegation contained above, as if fully set forth herein.

43.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all defendants.

44.     Defendants were sellers and offerors and/or solicitors of purchasers of the shares offered pursuant to the Registration Statement/Prospectus.

45.     The Registration Statement/Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and concealed and failed to disclose material facts.    The Individual Defendants' actions of solicitation included participating in the preparation and dissemination of the false and misleading Registration Statement/Prospectus.

46.     Defendants owed to the purchasers of Virgin Mobile shares, including plaintiff and other class members, the duty to make a reasonable and diligent investigation of the statements contained in the IPO materials, including the Registration Statement/Prospectus contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.    Defendants knew of, or in the exercise of

11

reasonable care should have known of, the misstatements and omissions contained in IPO materials as set forth above.

47.    Plaintiff did not know, or in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement/Prospectus.

48.    Plaintiff, individually and representatively, hereby offers to tender to defendants those shares which plaintiff and the other Class members continue to own, on behalf of all members of the Class who continue to own such common stock, in return for the consideration paid for those securities together with interest therein.  Class members who have sold their Virgin Mobile shares are entitled to rescissory damages.

## COUNT III

### VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT
### AGAINST THE INDIVIDUAL DEFENDANTS

49.    Plaintiff repeats and realleges each and every allegation contained in complaint as if fully set forth herein.

50.    This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

51.    The Individual Defendants, by virtue of their stock ownership, offices, directorships and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Virgin Mobile.  The Individual Defendants had the power and influence and exercised the same to cause Virgin Mobile to engage in the acts described herein.

52.    By virtue of the misconduct alleged herein, and the primary violation of Section 11 of the Securities Act, the Individual Defendants are liable are liable as control

persons to the plaintiff and the Class for damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on its own behalf and on behalf of the Class, prays for judgment as follows:

(a)    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)    Awarding plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

(c)    Awarding plaintiff and other class members rescission on their Section 12(a)(2) claim;

(d)    Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(e)    Such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by Jury.

Dated:  December 28, 2007                Respectfully submitted,

                                        **ZWERLING, SCHACHTER &**
                                        **ZWERLING, LLP**

                                        By:___ s/ Richard A. Speirs_____
                                             Richard A. Speirs (RS8872)
                                        41 Madison Avenue – 32nd Floor
                                        New York, NY 10010
                                        Phone: (212) 223-3900
                                        Facsimile: (212) 371-5969

**ZWERLING, SCHACHTER &
ZWERLING, LLP**
Kevin M. McGee
595 South Federal Highway, Suite 600
Boca Raton, Florida 33428
Phone:  (561) 544-2500
Facsimile:  (561) 544-2501

*Attorneys for Plaintiff*

EXHIBIT B

Yahoo!  My Yahoo!  Mail    Make Y! your home page                Search:                          Web Search

**YAHOO!** FINANCE    **Sign In**        Finance Home - Help        PrimeNewswire
                     New User? Sign Up

GET QUOTES    Finance Search

    E✱TRADE    AMERITRADE

**Press Release**                    Source: Kahn Gauthier Swick, LLC

# Investor Alert: KGS Announces Initial Filing of Securities Class Action Lawsuit Against Virgin Mobile USA, Inc. -- VM

Thursday November 22, 1:01 am ET

NEW ORLEANS, Nov. 22, 2007 (PRIME NEWSWIRE) -- Kahn Gauthier Swick, LLC (``KGS'') has filed the first class action lawsuit against Virgin Mobile USA, Inc. (``VM USA'' or the ``Company'') (NYSE:VM - News) in the United States District Court for the District of New Jersey, on behalf of shareholders who purchased the common stock of VM USA in connection with the Company's IPO on or about October 11, 2007, or who purchased shares thereafter in the open market. No class has yet been certified in this action.

UNLESS A CLASS IS CERTIFIED, YOU ARE NOT PERSONALLY REPRESENTED BY COUNSEL UNLESS YOU RETAIN AN ATTORNEY.

If you purchased shares of VM USA in connection with the IPO or if you purchased shares thereafter in the open market, you are urged to contact Lewis Kahn, Managing Partner, KGS, toll free 1-866-467-1400, ext. 100, via cell phone at 504-301-7900, or by email at lewis.kahn@kgscounsel.com to learn about your legal rights and how this action may benefit you. For further information on KGS, please visit http://www.kgscounsel.com.

ADVERTISEMENT

─ advertisement ─

**Eight Costly Investment Mistakes (and How to Avoid Them)**

If you have a $500,000 portfolio, you know making money isn't just about picking stocks. It's also about avoiding mistakes that can harm your portfolio. A brand new report by Forbes columnist and money manager Ken Fisher is called "The Eight Biggest Mistakes Investors Make and How to Avoid Them." Read it now before problems start.

Click Here to Download Your Report!

─ FISHER INVESTMENTS™ ─

VM USA, certain of its officers and directors, certain controlling majority shareholders, and the Company's underwriters are charged with including, or allowing the inclusion of, materially false and misleading statements in the Registration Statement and Prospectus issued in connection with the IPO, in violation of the Securities Act of 1933.

The Complaint charges that VM USA raised over $412.5 million through the issuance of 27.5 million shares, despite the Registration Statement's false and misleading statements. Specifically, defendants each failed to conduct an adequate due diligence investigation into the Company prior to the IPO,

**Related Quote**

VM 22-Jan 3:59pm (C) Yahoo!



VM    7.46    -0.21    News
**View Detailed Quote**
Delayed 20 mins
Providers - Disclaimer

**Related News Stories**

· VIRGIN MOBILE USA, INC. Files SEC form 8-K, Change in Directors or Principal Officers, Financial Statements and Exhib - EDGAR Online (4:24 pm)

· Investor Alert: Only 1 Day Left for Virgin Mobile USA, Inc. Shareholders to Request Lead Plaintiff Position in Securities Class Action Lawsuit -- VM - PrimeNewswire (Mon Jan 21)

· Law Offices of Howard G. Smith Announces Class Action Lawsuit Against Virgin Mobile USA, Inc. - PR Newswire (Wed Jan 16)

· Virgin Mobile Marketing Chief to Leave - AP (Wed Jan 16)

More....

· By industry: Wireless Communications

ADVERTISEMENT

DINER DASH
Hometown Hero

Now play with friends for more fun!

**Top Stories**

· Stocks Plunge on Recession Fears - AP (4:32 pm)

and they also each failed to reveal, at the time of the IPO, that Virgin Mobile was also not performing according to plan and that results for the third quarter of 2007 -- the period ended a full 2 weeks prior to the VM USA IPO -- showed growing losses as expenses rose and business slowed, indicating that the Company would be forced to revise downward its near-term forward financial and operational guidance.

On November 16, 2007, approximately one month after the IPO, investors learned the truth about VM USA's financial and operational condition, after defendants revealed that the Company had suffered a widening loss for the third quarter, the period ended September 30, 2007, as a result of rising expenses -- a loss of $7.3 million, or ($0.15) per share, compared with a loss of only $5.1 million, or ($0.10) per share, in the same period the prior year. These results also contrasted the $28.9 million in net income, and profits of $0.55 per share reported in the first six months of 2007, reported prior to the IPO. Further, Defendants also revealed that fourth-quarter 2007 outlook called for between 350,000 and 400,000 net customer additions, an anemic amount analysts described as ``weak,'' and that 4Q:07 guidance would be what was described as ``well below'' expectations.

On this news, shares of VM USA fell nearly 30% in intra-day trading, from an opening trading price of $11.09 per share to a trading low of $8.07 per share before closing the trading day at $9.10 per share, on exceedingly high volume of 6.512 million shares.

If you wish to serve as lead plaintiff in this class action lawsuit, you must move the Court no later than January 22, 2008. Any member of the purported class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member. If you would like to discuss your legal rights, you may e-mail or call KGS Managing Partner Lewis Kahn, without obligation or cost to you, toll free 1-866-467-1400, ext. 100, or by email at lewis.kahn@kgscounsel.com. To learn more about KGS, you may visit http://www.kgscounsel.com. KGS focuses its practice on securities class action litigation, and has been appointed lead counsel in numerous federal securities class actions.

SPECIAL NOTICE: While federal law does not prohibit other lawyers from ``announcing'' this class action through the issuance of other press releases, KGS is the law firm that researched, investigated, drafted, and filed the securities class action case against VM USA. If you are a VM USA shareholder who decides to contact one of these lawyers, KGS reminds you to fully interview any such lawyer to assure that he or she thoroughly understands the facts surrounding the substantive claims KGS has filed in Court. It is critically important that interested parties carefully evaluate any other firm that may be competing with KGS to prosecute the VM USA class action. Critical components of a law firm's ability to successfully prosecute this action and obtain a strong recovery for you include its knowledge of applicable federal securities laws, the resources it will dedicate to prosecution of the case (including the number of lawyers the firm has available for the Virgin Mobile USA class action), AND especially the quality of the firm's work.

More information on this and other class actions can be found on the Class Action Newsline at http://www.primenewswire.com/ca/

*Contact:*

KGS
Lewis Kahn
1-866-467-1400, ext. 100
lewis.kahn@kgscounsel.com

Source: Kahn Gauthier Swick, LLC

- Fed Cuts Interest Rate 3/4 of a Point - AP (1:03 pm)
- Bush Optimistic About Stimulus Package - AP (4:10 pm)
- Profits Plunge at BofA, Wachovia - AP (4:27 pm)

More...

- Most-viewed articles

### RSS Feeds

Add headlines to your personalized My Yahoo! Page ( About My Yahoo! and RSS )

VM Headlines

Wireless Communications Headlines

More Finance RSS Feeds

✉ Email Story       📟 Set News Alert        🖨 Print Story

[ Search News ]

Sponsor Results

Forex Trading Platform from GFT
Award-Winning Software. Visual Trading. Try GFT's Risk-Free Demo.
www.GFTforex.com

Car Insurance Quotes Online
Compare auto insurance quotes from top companies online.
www.insurance.com

Fed Cuts Interest Rates Again
Mortgage Rates Hit 26 Month Lows. Calculate Your New Mortgage Payment.
www.LowerMyBills.com
(What's This?)

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 PrimeNewswire. All rights reserved. Redistribution of this content is expressly prohibited without prior written consent. PrimeNewswire makes no claims concerning the accuracy or validity of the information, and shall not be held liable for any errors, delays, omissions or use thereof.

EXHIBIT C

## CERTIFICATION OF ESPERANZA REYNOLDS

I, Esperanza Reynolds, declare that:

1.  I have reviewed the complaint regarding Virgin Mobile USA, and have authorized Zwerling, Schachter & Zwerling, LLP to file a lead plaintiff motion on my behalf.

2.  I did not purchase any security, which is the subject of this action, at the direction of counsel for plaintiff or in order to participate in this private action.

3.  I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  My transactions in the security that is the subject of this action during the class period are as follows:

| Date | Security | Transaction | # Shares | Price | Total |
|------|----------|-------------|----------|-------|-------|
| 10/11/07 | Common | bought | 2000 | $15.60 | $31,325.90 |

5.  During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in any action filed under the federal securities laws.

6.  I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I, Esperanza Reynolds, declare under penalty of perjury that the foregoing is true and correct.

January 10, 2008

Esperanza Reynolds

## CERTIFICATION OF FREZA ZARR

I, Freza Zarr, declare that:

1.     I have reviewed the complaint regarding Virgin Mobile USA. and have authorized Zwerling, Schachter & Zwerling, LLP to file a lead plaintiff motion on my behalf.

2.     I did not purchase any security, which is the subject of this action, at the direction of counsel for plaintiff or in order to participate in this private action.

3.     I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     My transactions in the security that is the subject of this action during the class period are as follows:

| Date | Security | Transaction | # Shares | Price | Total |
|------|----------|-------------|----------|-------|-------|
| 10/11/07 | common | bought | 1000 | $15.60 | $15,600.00 |

5.     During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in any action filed under the federal securities laws.

6.     I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I, Freza Zarr, declare under penalty of perjury that the foregoing is true and correct.

January 7, 2008

_____
Freza Farr
Reza Zarr

# EXHIBIT D

## FIRM RESUME OF
## ZWERLING, SCHACHTER & ZWERLING, LLP

The firm of Zwerling, Schachter & Zwerling, LLP was formed on January 1, 1985 (the "Zwerling firm"), and is currently involved in numerous class actions in the areas of securities fraud, consumer fraud, and antitrust litigation.

**Securities Litigation**

The Zwerling firm has acted or is presently acting as a lead counsel or as a member of an executive committee for plaintiffs in many securities related lawsuits, including: *In re First BanCorp Securities Litigation*, D.P.R. Civ. No. 3:05-cv-02148-PG; *Miller v. Lazard, Ltd., et al.*, S.D.N.Y. Civ. No. 05-CV-05630; *In re Silicon Image, Inc. Securities Litigation*, N.D. Cal. Master File No. C 05-00456 MMC; *In re: Old Banc One Shareholders Securities Litigation*, N.D. Ill. Civ. No. 00C2100; *In re Network Associates Derivative Litigation*, Superior Ct. Cal., Santa Clara Cty., CV 781854; *In re Telxon Corporation Securities Litigation*, N.D. Ohio, 5:98-CV-2876; *In re Corrections Corporation Shareholder Litigation*, Tennessee Chancery Ct., Master File No. 98-1257-iii; In *re Adaptec Inc. Derivative Litigation*, Superior Ct. Cal., Santa Clara Cty., CV 772590; In *re Pacific Scientific Securities Litigation*, C.D. Cal., No. SACV-96-1106-LHM(EEx); *Kaplan v. Prins Recycling Corp.*, D.N.J., 96 Civ. 2444; *In re Health Management Inc. Securities Litigation*, E.D.N.Y., 96 Civ. 889; *Weikel v. Tower Semiconductor, Ltd.*, D.N.J., 96 CV 03711; *In re Bennett Funding Group Inc. Securities Litigation*, S.D.N.Y., 96 Civ. 2583; *In re Horizon/CMS Healthcare Corporation Securities Litigation*, D.N.M., Master File No. 96-044 BB/LCS; *Rosenberg v. Stauth*, W.D. Okla., Civil Action No. 96-1808-M; *In re Solomon, et al. v. Armstrong*, Del. Chan. Ct., CA No. 13515 (the "GM/EDS Split-off Litigation"); *In re Archer Daniels Midland Company Derivative Litigation*, Del. Ch. Ct., Cons.

1

C.A. No. 14403; *In Re American Pacific Securities Litigation*, D. Nev., CV-S-93-00576-PMP; *McNeil v. Austin*, Sup. Ct., N.Y. Co., Index No. 33189/91, *In Re Foodmaker/Jack-in-the-Box Securities Litigation*, W.D. Wash., No. C93-517WD; *In re Ames Department Stores, Inc. Stock Litigation*, D. Conn., 90-00027 (PCD); *In Re: General Development Corporation Securities Litigation*, S.D. Fla., 90-069; *In Re Republic Pictures Corporation Shareholders Litigation*, Del. Chan. Ct., C.A. No. 13122; *In Re Blockbuster Entertainment Corp. Shareholders Litigation*, Del. Chan. Ct., Civil Action No. 13319; *In re First Capital Holdings Corporation Financial Products Securities Litigation*, C.D. Cal., MDL No. 901; *In re New World Securities Litigation*, C.D. Cal., CV 88-06260; *In re Anchor Securities Litigation*, E.D.N.Y., 88 Civ. 3024; *3Com Corp. Securities Litigation*, N.D. Cal., C89-20480; *In re Par Pharmaceutical Derivative Litigation*, S.D.N.Y., 89 Civ. 5497 (RPP); *Fishbein v. Resorts International Inc.*, S.D.N.Y., 89 Civ. 6043 (MGC); *In re Bank of Boston Securities Litigation*, D. Mass., 89-2269-H; *In re Howard Savings Bank Securities Litigation*, D.N.J., 89-5131; *Merrit v. Gulf States Utilities Co.*, E.D. Tex., B-86-574-CA.

In addition, the Zwerling Firm represents or has represented union pension funds and public employee pension funds in securities litigation, including: *In Re: Doral Financial Corp. Securities Litigation*, S.D.N.Y., Case No.: 1:05-md-1706 (RO); *Clinton Charter Township Police and Fire Retirement Systems v. Donald. J. Reckler, et al.,* E.D.N.Y, Case No.: 03 CV 5008 (TCP).

The following is a representative sample of the complex securities claims which the Zwerling firm has litigated:

·       *In re Bennett Funding Group Inc. Securities Litigation*, S.D.N.Y., 96 CV 2583 - securities fraud class action involving the single largest alleged Ponzi scheme in the United

2

States. The Zwerling firm has been on the Executive Committee successfully prosecuting the accountants, insurers, and sellers of the alleged fraudulent securities.

· *In re Health Management Inc. Securities Litigation*, E.D.N.Y., 96 Civ. 889 - securities fraud class action alleging accounting fraud by the company and its auditors. The Zwerling firm was co-lead trial counsel in the first case tried pursuant to the Private Securities Litigation Reform Act of 1995.

· *Rosenberg v. Stauth*, Civil Action No. 96-1808-M - shareholders' derivative action involving alleged improper business practices at Fleming Companies, Inc. in which the demand futility defense was successfully defeated.

· *In re ICN/Viratek Securities Litigation*, S.D.N.Y., 87 Civ 4296- securities fraud class action involving FDA sought approval of an HIV drug.

· *McNeil v. Austin*, Index No. 33189/91 - shareholders' derivative action regarding the sale of defective nuclear containment systems by General Electric.

· In re Adaptec Inc. Derivative Litigation, Master File No. CV 772590 and In re Network Associates Derivative Litigation, Superior Ct. Cal., Master File No. CV 781854– shareholders' derivative lawsuits pursuant to California's insider trading statute to recover profits from the company's officers and directors.

· *In re Ames Department Stores, Inc. Stock Litigation*, D. Conn., 90-00027 (PCD) - securities fraud class action in which the Second Circuit reaffirmed the scope of the "in connection with" requirement of the Securities Exchange Act §10(b).

· *In re Corrections Corporation Shareholder Litigation*, Tennessee Chancery Ct., Master File No. No. 98-1257-iii - shareholder class action challenging a management-led buyout of public shareholders in exchange for shares in a publicly held REIT.

Courts have commented favorably upon the expertise of the Zwerling firm. In appointing the firm as lead counsel in *In re Old Banc One Shareholders Securities Litigation*, N.D. Ill., 1:00-CV-2100, the Court noted that the "attorneys have extensive experience, many successes on their resumes, and have obtained sizable recoveries on behalf of their clients." Minute Order, dated December 21, 2000.

In appointing it as lead counsel in *In re Telxon Corporation Securities Litigation*, N.D. Ohio, 5:98-CV-2876, the Court determined that the Zwerling firm has "the requisite ability and

3

expertise to prosecute and manage this litigation effectively." Memorandum and Order entered August 25, 1999, p. 39.

As a member of a team of plaintiffs' trial counsel in *In re ICN/Viratek Securities Litigation*, S.D.N.Y., 87 Civ 4296, the Zwerling firm was complimented by Judge Kimba Wood as having done a "superb job on behalf of the class.... This was a very hard fought case. You had very able, superb opponents, and they put you to your task.... The trial work was beautifully done and I believe very efficiently done...."

In *In re Par Pharmaceutical, Inc. Derivative Litigation*, S.D.N.Y., 89 Civ 5742 (RPP), Judge Patterson, in commenting on the Zwerling firm, said "[they] acted skillfully and resourcefully.... [The Zwerling firm] exercised wisdom and judgment and negotiated a skillful settlement with the defending company and with the officer and director/defendants." (Slip Op. June 12, 1992).

Chief Judge Weinstein, in the *Jack Eckerd Corporation* litigation (E.D.N.Y. 1986), and Judge Charles P. Sifton in both *Golden v. Shulman* [1988 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶94,060 (E.D.N.Y. 1988) and *Cagan v. Anchor Savings Bank, FSB*, [1990] Fed. Sec. L. Rep. (CCH) ¶94,060 (E.D.N.Y. 1990) also commented favorably upon the Zwerling firm.

One of the partners of the Zwerling firm was appointed by former Chief Judge Browning as Proof-of-Claim Counsel in connection with the loss analysis in *In re Washington Public Power Supply System Securities Litigation*, MDL 551, in the United States District Court for the District of Arizona. In that matter, former United States District Judge Nicholas J. Bua, as Special Master appointed by the Court, in commenting on one of the partners in the firm, said: "I . . . find that the services of Mr. Schachter were efficiently and reasonably performed by him personally.... Mr. Schachter specifically was appointed by the District Court to serve as Claims

4

Counsel.... It was not unreasonable for a senior partner like Mr. Schachter, with his vast knowledge of the case, to directly oversee the claims administration process rather than relying upon less knowledgeable junior attorneys. The class received its money's worth for Mr. Schachter's services...."

**Antitrust / Consumer Litigation**

The Zwerling firm also is, or has acted as, a lead counsel or member of an executive committee in numerous class actions involving consumer antitrust claims and deceptive trade practices, including: *Karofsky v. Abbott Laboratories, et al.*, Case No. CV-95-1009 (as well as in 10 related cases in other state courts); *In Re Lorazepam and Clorazepate Antitrust Litigation*, D.D.C., MDL-1290 (TFH) (as well as in 11 related cases in state courts); *Newman v. DuPont Merck Pharmaceutical Company*, Superior Ct. Cal., Case No. 788358; *In Re Ciprofloxacin Hydrochloride Antitrust Litigation*, E.D.N.Y., Master File No. CV-00-4428, MDL No. 1383; *Pickett v. Holland America Line*, 2000 WL 1141052 (Wash. App. Div. 1); *Latman v. Costa Cruise Lines*, N.V., 758 So.2d 699 (2000); *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436 (1999) (as well as in 7 related cases in other state courts); *Garcia v. General Motors Corporation*, N.J. Superior Ct., Docket No. L-4394-95; *In re Playmobil Antitrust Litigation*, E.D.N.Y., 95 Civ. 2896; and *Boni v. America Online Inc.*, Del. Chancery, New Castle County, 95-C-07 and *Feige v. America Online Inc.*, Sup. Ct., N.Y. County, and Index No. 118333/95) (as well as other related cases in state courts).

In the antitrust area, the Zwerling firm was co-lead counsel and a member of the Executive Committee in eleven actions filed against the major pharmaceutical manufacturers alleging violations of state antitrust laws for charging higher prices to consumers who purchased

5

brand name prescription drugs from retail pharmacies. Those cases resulted in a $65 million settlement. The courts presiding over those cases have commented on the Zwerling firm's expertise:

- I think the lawyering in this case is most commendable. I think that both sides have accorded themselves in a manner that allows us to be proud of the profession. . .

*Kerr v. Abbott Laboratories, et al.*, Case No. 96-2837, Transcript of Hearing at 16-17. (Dist. Ct. Hennepin County, Minn., Nov. 24, 1998).

- This Court, in particular, has been helped along every step of the way by some outstanding lawyering . . . You can hardly say that there's been anything but five star attorneys involved in this case.

*Scholfield v. Abbott Laboratories, et al.*, Case No. 96 CV 460, Transcript of Hearing at 31 & 33. (Cir. Ct. Dane County, Wisc., Oct. 5, 1998).

- I think the quality of counsel is excellent.

*McLaughlin v. Abbott Laboratories, et al.*, Case No. CV 95-0628, Transcript of Hearing at 28. (Super. Ct. Yavapai County, Ariz., Oct. 28, 1998).

- I'll join my learned colleagues from this and other jurisdiction[s] in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity, and especially the cost effective way in which this settlement is proposed to be distributed.

*Karofsky v. Abbott Laboratories, et al.*, Case No. CV-95-1009, Transcript of Hearing at 17. (Super. Ct. Cumberland County, Maine, Dec. 2, 1998).

The Zwerling firm was appointed co-lead counsel for plaintiffs in numerous related indirect purchase actions brought against Mylan Laboratories, Inc. regarding injury to competition and monopolization, as well as price fixing. Those actions include an action in

6

federal court, *In Re Lorazepam & Clorazepate Antitrust Litigation*, D.D.C., MDL-1290 (TFH), in which discovery for all related actions was consolidated and coordinated. The plaintiffs represented by the Zwerling firm include several institutions, such as union health funds and Blue Cross/Blue Shield.

The Zwerling firm also represents union health and welfare funds in litigation to recover damages for price-fixing and other anti-competitive behavior in: *In re: Oxycontin Antitrust Litigation,* S.D.N.Y., 04 MDL 1603 (SHS); *In Re Tamoxifen Citrate Antitrust Litigation*, E.D.N.Y., MDL No. 1408 (ILG); In re Ciprofloxacin Hydrochloride Antitrust Litigation, E.D.N.Y., Master File No.: 1:00-MD-1383 (DGT).

The Zwerling firm currently plays a significant role in the prosecution of two major antitrust multi-district litigations: *In re Insurance Brokerage Antitrust Litigation*, D.N.J., MDL. No. 1633 (FSH); *Funeral Consumers Alliance, Inc. et al. v. Service Corporation International, et al.*, S.D. Tex., C.A. No. H-05-CV-03394 (KMH).

In addition, the Zwerling firm has also represented union health and welfare funds in litigation against the tobacco industry. Those claims were for the excess costs incurred by the funds in providing health care to the members of their unions as a result of the fraudulent and deceptive practices of the tobacco companies *(Eastern States Health & Welfare Fund, et al. v. Philip Morris, Inc., et al.*, Sup. Ct. N.Y. Co., Index No. 97/603869).

The firm has also acted as counsel to a travel agency in litigation regarding the commission structure imposed by the airlines (*NGL Travel Associates v. American Airlines Inc.*, E.D.N.Y., 95 Civ. 0755, n/k/a *In Re Airline Ticket Commission Antitrust Litigation*, MDL #1058, D. Minn.).

In addition, the firm represents consumers who have been the victims of overcharging in the sale of toys in *In re Playmobil Antitrust Litigation*, E.D.N.Y., 95 Civ. 2896. Judge Seybert complimented the work of Class Counsel, including the Zwerling Firm, stating in her opinion certifying the Class:

> As set forth in greater detail in the firm resumes...: (1) Zwerling, Schachter & Zwerling, LLP [and three other firms] ... all have extensive familiarity with the prosecution of complex litigations, class actions and specifically, antitrust litigations.... This is further borne out by counsels' submissions and conduct to date before this Court.

*In re Playmobil Antitrust Litigation*, 1998 WL 966003 at *13 (E.D.N.Y. Dec. 30, 1998).

In the area of deceptive trade practices, the Zwerling firm was lead counsel in coordinated nationwide actions against the world's leading passenger cruise lines regarding their advertising practices concerning "port charges." (*Cicogna v. Royal Caribbean Cruises, Ltd.*, Cir. Ct. Dade Co. 96-08075; *Espinet v. Kloster Cruise Ltd.*, Cir. Ct. Dade Co. 96-08076; *Bellikoff v. Celebrity Cruises Inc.*, Cir. Ct. Dade Co. 96-08077; *Hackbarth v. Carnival Cruise Lines Inc.*, Cir. Ct. Dade Co. 96-08078; *Glassman v. Renaissance Cruises, Inc.*, Cir. Ct. Broward Co. 96-005490; *Pickett v. Holland America Line*, Sup. Ct., King Co. (Wash.) 96-2-10831, *Barton v. Princess Cruises Inc.*, Sup. Ct., L.A. Co. BC 148448); *Millheiser v. Dolphin Cruise Line*, Cir. Ct. Dade Co. 96-18146; *Latman v. Costa Cruise Lines N.V.*, Cir Ct. Dade Co. 96-18139; and *Cronin v. Cunard Cruise Line*, Sup. Ct., N.Y. Co., 96-115899). In *Pickett v. Holland America Line*, the Court complimented the firm by declaring that "[t]his has been litigated very professionally from the beginning to the end." Transcript of Hearing at p.116, September 28, 1998.

The Zwerling firm has also acted as one of the lead counsel in coordinated nationwide actions against America Online Inc. regarding its deceptive billing practices (*Boni v. America Online Inc.*, Del. Chancery, New Castle County, 95-C-07 and *Feige v. America Online Inc.*, Sup.

8

Ct., N.Y. County, Index No. 118333/95); the firm served as lead attorney in two cases challenging deceptive practices by New York Telephone (*Blair v. NYNEX Corp.*, Sup. Ct., Bronx Co., Index No. 14692-95, involving failure to refund over-deposits on pay phone calls, and *Forrest v. New York Telephone*, Sup. Ct., Albany Co., Index No. 1690-95, involving failure to properly implement line blocking against the Caller ID system).

The Zwerling firm has brought several actions against the computer industry involving deceptive practices in the sale of co-called new computers with used parts (*Zieniewicz v. Packard Bell Electronics*, Sup. Ct., Nassau Co., Index No. 012356-95 and *In re Packard Bell Consumer Class Actions Litigation*, Sup. Ct., L.A. County, Index No. 125671); the sale of computer monitors representing a larger screen size than actually had (*In Re Computer Monitor Cases*, Sup. Ct., S.F. County, Judicial Council Coordination Proceeding No. 3158); and in providing worthless warranties with the sale of computers (*Brummel v. Leading Edge Products Inc.*, Sup. Ct., N.Y. Co., Index No. 102081/96). The firm was also actively involved in litigation over the deceptive sales practices in the insurance industry (*In Re The Prudential Insurance Company of America Sales Practices Litigation*, MDL 1061, D.N.J., 95-4704 (AMW)).

In addition, the firm was involved in cases regarding defective automobile brakes (*McGill v. General Motors Corp.*, Sup. Ct., Bronx Co., Index No. 15525-95) (related to *Garcia v. General Motors Corp.*, N.J. Superior Ct., Docket No. L-4394-95) and defective pacemakers (*Gould v. Telectronics Pacing Systems*, S.D. Ohio, 95-726).

The firm was appointed Administrator for the General Motors Diesel Litigation Fund under the direction of Judge Henry Bramwell, District Judge, United States District Court, Eastern District of New York.

**Constitutional and Civil Rights Litigation**

The Zwerling firm has been counsel in high profile constitutional and civil rights actions. In *Haley v. Pataki*, N.D.N.Y., 95-CIV 550, the firm obtained an order forcing the Governor of the State of New York to stop withholding salaries from legislative employees in an attempt to coerce members of the State Legislature to vote on his State budget.  In a related case, *Dugan v. Pataki*, Sup. Ct., Kings Co., Index No. 16341/95, the firm obtained the same relief for the elected members of the State Legislature.

The Zwerling firm has represented the New York City Council in *Mayor of the City of New York v. Council of the City of New York*, Sup. Ct., N.Y. Co., Index No. 402354/95, an action in which the Mayor challenged the legislative powers of the City Council in connection with the establishment of a board to review allegations of police corruption.

The Zwerling firm also represented the Straphangers Campaign, a mass transit advocacy group, in *New York Urban League v. Metropolitan Transportation Authority*, 95-CIV-9001 (RPP), an action to compel the State of New York and the MTA to allocate transit subsidies in a manner which does not have a discriminatory impact on minority ridership in New York City.

10

## **Members of the Firm**

### **Jeffrey C. Zwerling**

Jeffrey C. Zwerling was admitted to the bar of the State of New York in 1972 and to the bar of the State of Arizona in 1981; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit. He received a Bachelor of Science degree with Honors from Lehigh University in 1968 and a Juris Doctor degree from Columbia University School of Law in 1971. He was Articles Editor of the Columbia Journal of Transnational Law. His professional affiliations include: New York State Bar Association, Association of the Bar of the City of New York, Nassau County Bar Association, and State Bar of Arizona.

On July 1, 1977, Mr. Zwerling founded the Law Offices of Jeffrey C. Zwerling; on January 1, 1985 that firm became Zwerling, Schachter & Zwerling. Prior to 1977, Mr. Zwerling was associated with the firms of Gasperini, Koch & Savage; Koch & Gluck; and Murray A. Gordon, P.C., with emphasis on civil litigation, real estate, general corporate and commercial matters. Mr. Zwerling has represented and advised the Uniformed Fire Officers Association in regard to its pension funds and annuity plans.

Mr. Zwerling has extensive experience in all phases of complex litigation, including jury and non-jury trials, mediation, expert discovery, and settlement negotiations. He has negotiated several innovative corporate governance and structural changes in the resolution of shareholders' complaints. He is highly knowledgeable about economic and finance issues.

Mr. Zwerling is located in both the firm's New York and Long Island offices.

11

**Robert S. Schachter**

Robert S. Schachter was admitted to the bar of the State of New York in 1972; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York and the Central District of California, the United States Court of Appeals for the Second, Fifth and Ninth Circuits, and the Supreme Court of the United States. He received a Bachelor of Arts degree from Syracuse University in 1968 and a Juris Doctor degree from Brooklyn Law School in 1971. His professional affiliations include: The American Bar Association (Lecturer, Panels in Class Actions, 1980 and 1998) and the Second Circuit Federal Bar Council. Mr. Schachter was a panelist at the Public Funds Summit (2002-2004), Investment Education Symposium sponsored by the Council of Louisiana Trustees (2002), and Fire & Police Pension Summit (2002).

Prior to the formation of the Zwerling firm, Mr. Schachter was associated since 1973 with the firm now known as Goodkind Labaton Rudoff & Sucharow LLP. Mr. Schachter became a partner of that firm on January 1, 1978, concentrating in complex multi-district litigation.

Mr. Schachter has extensive experience in all phases of complex litigation. He has been involved in many settlement negotiations, as well as the drafting of complex settlement documents, and has particular expertise in the administration of class settlements. Mr. Schachter has been instrumental in crafting novel settlements which have been applauded by courts in securities, as well as antitrust matters, including corporate governance issues.

Mr. Schachter is located in both the firm's New York and Long Island offices.

**Robin F. Zwerling**

Robin F. Zwerling was admitted to the bar of the State of New York in 1976; she is admitted to the following federal courts:  the United States District Court for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second, Fourth and Seventh Circuits, and the Supreme Court of the United States.  She received a Bachelor of Arts degree *cum laude* from Jackson College of Tufts University in 1972, and a Juris Doctor degree from Georgetown University Law Center in 1975.  Her memberships include:  the American Bar Association, the National Institute of Trial Advocacy, the National Association of Securities and Commercial Law Attorneys, and the Second Circuit Federal Bar Council.

Ms. Zwerling has concentrated in litigation since her graduation from law school.  At that time, she became associated with Martin, Clearwater & Bell, becoming a partner in 1982 and remained there until the formation of the Zwerling firm in 1985.  Ms. Zwerling has extensive experience in all phases of litigation, including trials and appellate arguments.  She has tried cases in both state and federal courts.  Ms. Zwerling successfully completed the National Institute of Trial Advocacy's Advanced Trial Practice course after having tried a number of cases.

Ms. Zwerling is located in the firm's New York office.


**Susan Salvetti**

Susan Salvetti was admitted to the bar of the State of New York in 1980; she is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York.  She received a Bachelor of Arts degree *summa cum laude* from Thomas More College of Fordham University in 1976 and a Juris Doctor degree from Fordham

13

University School of Law in 1979. Her memberships include: the American Bar Association, the New York State Bar Association – Committee Member of the Commercial and Federal Litigation Section on Class Actions, Who's Who in American Women, and Phi Beta Kappa.

Ms. Salvetti has concentrated in litigation throughout her career, becoming a partner of the Zwerling firm on January 1, 1992. Prior to her association with the firm in 1985, she was associated with Martin, Clearwater & Bell. Prior to that time, Ms. Salvetti was associated with Newman, Tannenbaum, Helpern & Hirschtritt, a general practice firm.

Ms. Salvetti has extensive experience in all phases of complex litigation, including as trial counsel and complex discovery. She has taken numerous depositions, argued motions before courts, and has negotiated complicated settlements in both securities and consumer matters.

Ms. Salvetti is located in the firm's New York office.


**Richard A. Speirs**

Richard A. Speirs was admitted to the bar of the State of New York in 1986; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Tenth Circuit. He received a Bachelor of Arts degree *cum laude* from Brooklyn College of the City University of New York in 1976. Mr. Speirs received his Juris Doctor degree from Brooklyn Law School in 1985, where he was awarded the Order of the Coif and was the recipient of American Jurisprudence Awards in Conflicts of Law and Labor Law. He is a member of the New York State Bar Association.

Mr. Speirs became a partner of the firm on January 1, 2000. Prior to his association with the Zwerling firm in 1997, Mr. Speirs was an associate of Bernstein Litowitz Berger & Grossmann LLP, where he concentrated primarily in securities and class action litigation.

Mr. Speirs has extensive experience in all phases of complex litigation, including the investigation and analysis of potential matters and the development of electronic discovery requirements. He has conducted many depositions of both fact and expert witnesses and has acted as trial counsel.

Mr. Speirs is located in the both the firm's New York and Long Island offices.

## Associates of the Firm

### Hillary Sobel

Hillary Sobel was admitted to the bar of the State of New York in 1989; she is also admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Fourth and Ninth Circuits. She received a Bachelor of Arts Degree from Barnard College of Columbia University in 1985, and a Juris Doctor degree from the Benjamin N. Cardozo School of Law of Yeshiva University in 1988, where she was Editor of the ILSA International Law Journal. Her memberships include: the American Bar Association.

Ms. Sobel has been involved in complex discovery, including responding to and drafting discovery requests, questioning fact and expert witnesses, as well as arguments before the court. She has also participated at trial, including witness questioning, as well as trial preparation.

Ms. Sobel is located in the firm's New York office.

15

**Sona R. Shah**

Sona R. Shah was admitted to the bar of the State of New Jersey in 1997, and to the bar of the State of New York in 1998; she is also admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York.  She received a Bachelor of Arts degree from New York University in 1994, and a Juris Doctor degree from Fordham University School of Law in 1997.  Her professional affiliations include:  the New York State Bar Association.

Prior to her association with the Zwerling firm, Ms. Shah was associated with the Center for Constitutional Rights.

Ms. Shah is located in the firm's New York office.

**Shaye J. Fuchs**

Shaye J. Fuchs was admitted to the bar of the State of New Jersey in 1999 and to the bar of the State of New York in 2000; he is also admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York.  He received a Bachelor of Arts degree *magna cum laude* from Queens College of the City University of New York in 1995, and a Juris Doctor degree from Brooklyn Law School in 1998.  His memberships include: the American Bar Association, the New York County Lawyers Association, and Phi Beta Kappa.

Prior to his association with the Zwerling firm, Mr. Fuchs interned at the New York Stock Exchange Enforcement Division and has been of counsel in securities class action lawsuits.

Mr. Fuchs is located in the firm's Long Island office.

16

## Anthony F. Prisco

Anthony F. Prisco was admitted to the bar of the State of New York in 1999; he is also admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York. He received a Bachelor of Science degree from Cornell University in 1995, and a Juris Doctor degree from Duke University School of Law in 1998, where he was a Contributions Editor for the Duke Environmental Law & Policy Forum.

After graduating from law school, Mr. Prisco served as a judicial law clerk to the Honorable Thomas C. Kleinschmidt of the Arizona Court of Appeals. Prior to joining the Zwerling firm, he served as court attorney for the New York State Supreme Court, Appellate Division, Second Department.

Mr. Prisco is located in the firm's New York office.

## Justin M. Tarshis

Justin M. Tarshis was admitted to the bar of the State of New York in 2003; he is also admitted to the United States District Court for the Southern and Eastern Districts of New York. He received a Bachelor of Science degree from the University of Wisconsin in 1999, and a Juris Doctor degree *cum laude* from Brooklyn Law School in 2002. While in law school, Mr. Tarshis was the recipient of the Samuel L. Sporn Academic Achievement Scholarship and the CALI Excellence for the Future Award in Civil Practice. In addition, Mr. Tarshis served as an intern to the Honorable Shira A. Scheindlin of the Southern District of New York, as well as an intern in the New York State Attorney General's Office.

Mr. Tarshis is located in the firm's New York office.

17

**Kevin M. McGee**

Kevin M. McGee was admitted to the bar of the State of New York in 1996 and to the bar of the State of Florida in 2003. He is admitted to the United States District Court for the Southern District of Florida. He received a Bachelor of Arts degree *cum laude* from the State University of New York at Stonybrook in 1990 and a Juris Doctor degree from Fordham University School of Law in 1995. At Fordham, Mr. McGee was a member of the Moot Court Board.

Prior to his association with the Zwerling firm, Mr. McGee was a Senior Counsel in the Enforcement Division of the United States Securities and Exchange Commission. In that position, Mr. McGee investigated potential violations of federal securities laws, prosecuted alleged violations of securities laws, conducted settlement negotiations, took testimony, conducted depositions, and worked with United States Attorneys in investigating and prosecuting cases. Cases he worked on involved, for example, Ponzi schemes, pump and dump schemes, insider trading, and accounting irregularities.

Mr. McGee is located in the firm's Boca Raton office.

**Stephen L. Brodsky**

Stephen L. Brodsky was admitted to the bar of the State of New York in 1994; he is also admitted to the United States District Court for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Third and Eighth Circuits. He received a Bachelor of Arts degree *summa cum laude* from the University of Pennsylvania in 1989, and a Juris Doctor degree from Columbia Law School in 1993, where he was a Harlan Fiske Stone

18

Scholar and member of the Columbia Journal of Law and Social Problems.    His memberships include: Phi Beta Kappa.

Mr. Brodsky has published "Federal Courts in New York Provide Framework For Enforcing Preliminary Agreements," in the New York State Bar Association Journal (March/April 2001) and "Defending an Agent Against a Claim for Breach of Warranty of Authority," NY Litigator (Spring 2001).    Prior to joining the Zwerling firm, Mr. Brodsky was associated with Sonnenschein Nath & Rosenthal, LLP.

Mr. Brodsky is located in the firm's New York office.


**Paul Kleidman**

Paul Kleidman was admitted to the bar of the State of New York in 2002; he is also admitted to the United States District Court for the Southern and Eastern Districts of New York. He received a Bachelor of Science degree from Boston University in 1998, and a Juris Doctor degree from the State University of New York at Buffalo School of Law in 2001.    While in law school, Mr. Kleidman was the recipient of the Martin Feinrider Merit Scholarship.    He served as Business Editor of the Buffalo Human Rights Law Review and was a Senior Member of the Jessup International Moot Court Board.

Prior to joining the Zwerling firm, Mr. Kleidman was an Assistant Corporation Counsel in the General Litigation Division of the New York City Law Department.    There, he worked on high profile class action lawsuits, including *Benjamin v. Horn* in the Southern District of New York.

Mr. Kleidman is located in the firm's New York office.

19

**Stephanie E. Kirwan**

Stephanie E. Kirwan was admitted to the bar of the State of New Jersey in 2004, and to the bar of the State of New York in 2005; she is also admitted to the following federal courts: the United States District Court for the District of New Jersey, and the United States District Court for the Southern and Eastern Districts of New York. She received a Bachelor of Arts degree from Tufts University in 2000, and a Juris Doctor degree *cum laude* from New York Law School in 2004, where she was an associate editor for the Law Review. Her professional associations include: the New York State Bar Association, the New York County Lawyers Association; and the New York State Trial Lawyers Association.

Prior to her association with the Zwerling firm, Ms. Kirwan was associated with the Renzulli Law Firm where her practice concentrated in litigation.

Ms. Kirwan is located in the firm's New York office.

## Of Counsel

**Dan Drachler**

Dan Drachler was admitted to the bar of the State of New York in 1988; he is also admitted to the bar of the States of Washington, New Jersey and Minnesota; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, the United States District Court for the Western and Eastern Districts of Washington, and the United States Court of Claims. Mr. Drachler received a Bachelor of Arts degree *cum laude* from the University of South Carolina in 1980, and his Juris Doctor degree *cum laude* from New York Law School in 1987. At New York Law School, Mr. Drachler was a member of the law review and was a John Ben Snow Merit Scholar. His professional affiliations

include: the American Bar Association, the Washington State Bar Association, the King County Bar Association, and the National Association of Consumer Advocates.

Prior to joining the Zwerling firm, Mr. Drachler served as Chief Deputy Attorney General for the State of New York. In that position, all litigation and administrative proceedings in the Securities Bureau were subject to Mr. Drachler's review. Mr. Drachler also regularly counseled state agencies and the Governor's office regarding a variety of legal and non-legal matters. From 1987 to 1993, Mr. Drachler was an associate and then partner of Koppell, Drachler & Lipofsky. At that firm, he concentrated in general civil litigation, real estate, and trusts and estates.

Mr. Drachler was an Adjunct Professor at New York Law School from 1992-97. He taught "Negotiation, Counseling and Interviewing," a course designed to develop skills in counseling clients and conducting negotiations in simple and complex matters.

Mr. Drachler is located in the firm's Seattle office.

**Joseph Lipofsky**

Joseph Lipofsky was admitted to the bar of the State of New Jersey in 1972, and is also admitted to the bar of the States of New York, Missouri and Michigan; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern District of Missouri, the Eastern District of Michigan, and the Supreme Court of the United States. He received a Bachelor of Science degree from Rider College in 1969, and a Juris Doctor degree *cum laude* from Seton Hall University School of Law in 1972. His professional affiliations include: the American Bar Association; the New York State Bar Association, where he serves on the Executive Committee

of the Antitrust Section; the National Lawyers Guild; and the National Association of Consumer Advocates. He also serves as a Board Member for Brooklyn Legal Services Corporation A; and for the Sugar Law Center for Economic and Social Justice.

Prior to joining the Zwerling firm, Mr. Lipofsky served as Deputy Counsel to the Attorney General of New York. In that capacity, he regularly counseled state agencies and the Governor's office regarding a variety of legal and non-legal matters. From 1991 to 1993, Mr. Lipofsky was counsel to the firm of Koppell & Drachler and then partner of Koppell, Drachler & Lipofsky. Prior to 1991, he served as an attorney and Executive Director with legal service programs in New Jersey, Missouri and Michigan, as well as with various labor unions including their ERISA funds.

Mr. Lipofsky is located in the firm's New York office.

**Jonathan Platnick**

Jonathan Platnick was admitted to the bar of the State of New York in 1979. Mr. Platnick received a Bachelor of Arts degree *magna cum laude* from The City University of New York 1971, and his Juris Doctor degree from the New York University School of Law in 1978.

His memberships include: Phi Beta Kappa.

Mr. Platnick is located in the firm's New York office.

**Timothy E. Gillane**

Timothy E. Gillane was admitted to the bar of State of New York in 1988; he is also admitted to the United States District Courts for the Southern and Eastern Districts of New York.

He received a Bachelor of Arts degree *cum laude* from the University of Connecticut in 1973, a Masters of Arts degree from Boston College (where he also taught under a fellowship) in 1975, and a Juris Doctor degree from New York Law School in 1987. His professional affiliations include the Brehon Law Society.

Prior to joining the Zwerling firm, Mr. Gillane was a staff attorney at Robin, Schepp, Yuhas, Doman & Harris, where his practice concentrated in litigation.

Mr. Gillane is located in the firm's New York Office.

**Lisa Holman**

Lisa Holman was admitted to the bar of the State of New York in 1998. She received a Bachelor of Arts degree from Cornell University in 1994, and a Juris Doctor degree from the University of Michigan Law School in 1997. Her memberships include the American Bar Association and the New York State Bar Association.

Prior to joining the Zwerling firm, Ms. Holman practiced corporate law and securities litigation with Goodkind Labaton Rudoff & Sucharow, LLP, now known as Labaton Sucharow & Rudoff LLP.

Ms. Holman is located in the firm's New York office.