**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN re VIRGIN MOBILE USA IPO LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | LEAD CASE NO: 2:07-cv-10589-TPG<br><br>(SECURITIES CLASS ACTION) |
| 2 WEST, INC., On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VIRGIN MOBILE USA, INC., DANIEL H. SCHULMAN, JOHN D. FEEHAN, JR., LEHMAN BROTHERS, INC., MERRILL LYNCH PIERCE FENNER & SMITH, INC. and BEAR STEARNS & CO., INC.<br><br>Defendants. | DOCKET NO.: 1:07-cv-11625-UA |

**MEMORANDUM IN SUPPPORT OF THE MOTION OF THE VOLPE GROUP TO CONSOLIDATE ANY FUTURE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………….1

PROCEDURAL BACKGROUND…………………………………………………………..2

STATEMENT OF FACTS………………………………………………………………..3

ARGUMENT……………………………………………………………………………...5

I. THE COURT SHOULD CONSOLIDATE ANY FUTURE RELATED ACTIONS...5

II. THE VOLPE GROUP SHOULD BE APPOINTED LEAD PLAINTIFF……………6

A. The Procedural Requirements Pursuant to the PSLRA…………………………...6

B. The Volpe Group is "The Most Adequate Plaintiff"……………..........................7

1. The Volpe Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff……………………………………………………..7

2. The Volpe Group Has the Largest Financial Interest……………………..8

3. The Volpe Group Satisfies the Requirements of Rule 23…………………8

i. The Volpe Group's Claims are Typical of the Claims of all the Class Members…………………………...……………………………….....9

ii. The Volpe Group Will Adequately Represent the Class……………10

III. THE COURT SHOULD APPROVE THE VOLPE GROUP'S CHOICE OF LEAD COUNSEL ……………………………………………………………………..11

CONCLUSION…………………………………………………………………………..11

**PRELIMINARY STATEMENT**

The Volpe Group (or "Movant") hereby moves to consolidate various related securities class actions filed against Virgin Mobile USA.[1] ("Virgin Mobile" or the "Company") and other Defendants, to be appointed Lead Plaintiff in this action pursuant to §27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PLSRA"), and for approval of its selection of the law firm of Kahn Gauthier Swick, LLC ("KGS"), and Carella Byrne Bain Gilfillan Checchi Stewart & Olstein, P.C. ("Carella Byrne") as Co-Lead Counsel for the Class.

The Volpe Group fully understands its duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certifications attached to the Declaration of Kim E. Miller in Support of the Motion of The Volpe Group to Consolidate All Future Related Actions, To Be Appointed Lead Plaintiff, and To Approve Proposed Lead Plaintiff's Choice of Counsel ("Miller Decl.") at Exhibit A, the Volpe Group has suffered losses of $215,124.67 as a result of its members' purchases of shares of Virgin Mobile common stock pursuant or traceable to the Company's October 11, 2007 Initial Public Offering (the "IPO" or the "Offering"). To the best of its knowledge, the Volpe Group has sustained the largest loss of any investor seeking to be appointed as Lead Plaintiff.

[1] The following actions were filed in the United States District Court for the Southern District of New York: *Ellen Brodsky v. Virgin Mobile USA, Inc., et al.*, 07-cv-10589-TPG (filed November 26, 2007); *Roger Joseph, Jr. v. Virgin Mobile USA, Inc., et al.*, 07-cv-11060-UA (filed December 6, 2007); *2 West, Inc. v. Virgin Mobile USA, Inc., et al.*, 07-cv-11625-UA (filed December 28, 2007). On December 20, 2007, The Honorable Thomas Greisa signed an Order consolidating the *Brodsky* and *Joseph* actions. *The 2 West, Inc.* action has yet to be consolidated with the *Brodsky* and *Joseph* actions in the Southern District of New York. This Court should also be aware that a now-consolidated action titled *In re Virgin Mobile USA IPO Litigation*, 2:07-cv-5619-SDW-MCA (filed November 21, 2007) was filed in the United States District Court for the District of New Jersey. Also currently pending is a Motion to Transfer all Related Securities Actions to the Southern District of New York, filed with the Judicial Panel on Multidistrict Litigation on January 7, 2008; briefing for that Motion has not yet completed.

In addition to evidencing the largest financial interest in the outcome of this litigation, the Volpe Group's Certifications demonstrate its members' intent to serve as Lead Plaintiff in this litigation, including their cognizance of the duties of serving in that role.[2] Moreover, the Volpe Group satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Accordingly, the Volpe Group respectfully submits this memorandum of law in support of its motion, pursuant to §27(a)(3)(B) of the Securities Act, as amended by the PSLRA, for an order: (1) consolidating all future related actions concerning the subject matters of this action pursuant to Fed. R. Civ. P. 42(a); (2) appointing the Volpe Group as Lead Plaintiff in this action pursuant to Section 27(a)(3)(B) of the Securities Act; and (3) approving Movant's selection of the law firms KGS and Carella Byrne as Co-Lead Counsel for the Class.

## PROCEDURAL BACKGROUND

The first lawsuit against defendants, *Michael Volpe v. Schulman, et al.*, No. 2:07-cv-5619-SDW-MCA, was filed on behalf of plaintiff Michael Volpe in the United States District Court for the District of New Jersey on November 21, 2007. Pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i), on November 22, 2007, the first notice that a class action had been initiated against Defendants was published on *Prime Newswire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than January 22, 2008. *See* Miller Decl. at Exhibit B.

---

[2] The relevant federal securities laws specifically authorize any Class Member seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii). A copy of the Volpe Group's Certifications of its members purchases in Virgin Mobile securities pursuant and/or traceable to the Company's October 11, 2007 IPO is attached as Exhibit A to the Miller Declaration that has been filed in support of this motion.

Members of the Volpe Group are Class Members (*see* Miller Decl. at Exhibit A) who have timely filed this motion within the 60 day period following publication of the May 1, 2007 notice.

## STATEMENT OF FACTS[3]

Virgin Mobile, its entire Board of Directors, its Chief Financial Officer and the Underwriters involved in the Offering (including, Lehman Brothers, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Bear, Stearns & Co., Inc., Raymond James & Assoc., Inc. and Thomas Weisel Partners, LLC) in addition to certain other controlling shareholders, are each charged with creating or distributing a materially false and misleading Registration Statement and Prospectus in connection with the Company's October 2007 IPO, in direct violation of the Securities Act. Specifically, Defendants each failed to conduct an adequate due diligence investigation into the Company prior to the IPO, and they also each failed to reveal, at that time of the IPO, that Virgin Mobile was also not performing according to plan and that results for the third quarter of 2007—*the period ended a full 2 weeks prior to the Virgin Mobile IPO*—showed growing losses as expenses rose and business slowed, indicating that the Company would be forced to revise downward, its near-term forward financial and operational guidance.

It was only on November 16, 2007, approximately one month after the IPO, however, that investors learned the truth about Virgin Mobile's financial and operational condition, after Defendants revealed that the Company had suffered a widening loss for the third quarter, the period ended September 30, 2007, as a result of rising expenses. For 3Q:07, the Company reported a ***loss*** of $7.3 million, or ($0.15) per share, compared with a loss of only $5.1 million, or

[3] These facts were derived from the allegations contained in the class action styled as *Michael Volpe v. Schulman, et al.*, No. 2:07-cv-5619-SDW-MCA (filed November 21, 2007 in the United States District Court for the District of New Jersey).

($0.10) per share, in the same period the prior year. These results also contrasted the $28.9 million in net income, and ***profits*** of $0.55 per share reported in the first six months of 2007, reported ***prior*** to the IPO. At that time, Defendants also revealed that the fourth-quarter 2007 outlook called for between 350,000 and 400,000 net customer additions, an anemic amount analysts described as "weak," and that 4Q:07 guidance would be, what was described as, "well below" expectations.

Following these belated disclosures of lower then expected 3Q:07 results, higher expenses and slowing sales, on November 16, 2007, shares of Company stock declined precipitously. That day, shares of Virgin Mobile fell almost 30% in intra-day trading—declining from an opening trading price of $11.09 per share, to a trading low of $8.07 per share before closing the trading day at $9.10 per share. That trading day Virgin Mobile also experienced exceptionally heavy trading volume, with over 6.512 million shares traded—more than five times the Company's recent average daily trading volume.

The precipitous decline in the price of Virgin Mobile shares following Defendants' belated disclosures was evidence of the eradication of the prior artificial inflation in the price of Company shares caused as a result of Defendants' publication of a materially false and misleading Registration Statement and IPO Prospectus. As a result of their purchases of Virgin Mobile stock in connection with the October 2007 IPO, including those who purchased shares traceable to the Offering in the public markets immediately thereafter, movant and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE FUTURE RELATED ACTIONS

Consolidation pursuant to Rule 42(a) is proper and routinely granted in actions such as this, where there are common questions of law and fact.[4] See *Yousefi v. Lockheed Martin Corp*., 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999).[5] Courts have recognized that securities class actions, in particular, are ideally suited to consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. See e.g., *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Indeed, "[i]n securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact" and the parties will not be prejudiced. *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately

---

[4] Here, the Court has signed an Order consolidating all securities actions filed against Defendants. However, subsequent to the Court's signing of that Order, on December 28, 2007, the *2 West*, *Inc.* action was then filed and is awaiting consolidation with the *Brodsky* and *Joseph* actions. If additional securities cases are filed alleging the same course of conduct and similar or identical claims against the same or similar Defendants, consolidation would be proper. *See* Rule 42(a).

[5] Rule 42(a) of the Federal Rules of Civil Procedure allows this Court to order consolidation of separate actions:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs of delay.

before two or more judges. *Id*. See also *In re Olsten Corp. Securities Litigation,* 3 F.Supp.2d 286 (E.D.N.Y. 1998).

Accordingly, this Court should enter an Order that consolidates any future filed cases with the instant action.

## II. THE VOLPE GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Prime Newswire* on November 22, 2007. *See* Miller Decl. Exhibit B.[6] This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than January 22, 2008. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. 15

---

[6] *Prime Newswire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. August 6, 1997).

U.S.C. § 77z-1(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the acts provide that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998); *Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

**B. The Volpe Group is "The Most Adequate Plaintiff"**

**1. The Volpe Group Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff**

The Volpe Group moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published notice on *Prime Newswire*, a national business-oriented wire service, on January 22, 2008. Accordingly, the Volpe Group meets the requirement of 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) and has filed its motion by January 22, 2008.

Moreover, the Volpe Group has sustained a substantial loss from its members' investment in Virgin Mobile stock and has shown its willingness to represent the Class by signing Certifications detailing its members' Virgin Mobile transaction information during the Class Period. *See* Miller Decl. Exhibit A. As demonstrated by their Certifications, the Volpe Group is prepared to consult with counsel on a regular basis, prior to every major litigation

event, and direct the course of litigation, with the benefit of counsel's advice. In addition, the Volpe Group has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, KGS, is attached as Exhibit C to the Miller Declaration.

**2. The Volpe Group Has the Largest Financial Interest**

According to 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran*, 220 F.R.D. at 401; *see also, Lee v. Axonyx, Inc., et al.*, No. 7:05-cv-2307, slip. Op., at pg. 8 (S.D.N.Y. Jan. 27, 2006) (Griesa, J.) (appointing movant with the largest financial interest). As demonstrated herein, Movant (with losses of $215,124.67) has the largest known financial interest in the relief sought by the Class. *See* Miller Decl. Exhibit A.

**3. The Volpe Group Satisfies the Requirements of Rule 23**

According to 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and

adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Oxford Health*, 182 F.R.D. at 49 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *See also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003), citing *In re Party City*, 189 F.R.D. at 106 ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification."). As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The Volpe Group has claims that are typical of those of other Class Members and can adequately serve as Lead Plaintiff.

**i. The Volpe Group's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the Class does not mean, however, that the claims must be identical. *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001), citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980); *see also, Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the Volpe Group's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. The Volpe Group and all of the Class Members purchased Virgin Mobile securities pursuant or traceable to the Company's October 11, 2007 IPO, when the stock prices were artificially inflated as a result of the Defendants' misrepresentations and omissions, and thus, both the Volpe Group and the Class Members suffered damages as a result of these purchases. Simply put, the Volpe Group, like all other Class Members: (1) purchased Virgin Mobile stock pursuant or traceable to the Company's October 11, 2007 IPO; (2) purchased Virgin Mobile stock at artificially-inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. The Volpe Group's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 50. The Volpe Group is not subject to any unique or special defenses. Thus, the Volpe Group meets the typicality requirement of Fed. R. Civ. P. Rule 23, because its claims are the same as the claims of the other Class Members.

**ii. The Volpe Group Will Adequately Represent the Class**

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 77z-1(a)(3)(B).

The Volpe Group's interests are clearly aligned with the members of the Class because its claims are identical to the claims of the Class. There is no evidence of antagonism between its interests and those of the proposed Class Members. Furthermore, the Volpe Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss they incurred as a result of the wrongful conduct alleged herein. This motivation, combined with the Volpe Group's identical interest with the members of the Class, clearly shows that the Volpe Group will adequately and vigorously pursue the interests of the Class. In addition, the Volpe Group has selected a law firm that is highly experienced in prosecuting securities class actions such as this one to represent them.

In sum, because of the Volpe Group's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met in this case. Therefore, since the Volpe Group not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), and has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

## III. THE COURT SHOULD APPROVE THE VOLPE GROUP'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

The Volpe Group has selected KGS and Carella Byrne to serve as proposed Co-Lead Counsel for the Class. These firms have not only prosecuted complex securities fraud actions,

but have also successfully prosecuted many other types of complex class actions. *See* Miller Decl. Exhibit C. Furthermore, the Volpe Group's counsel has continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, the Volpe Group respectfully requests that this Court: (1) consolidate all future related actions, (2) appoint the Volpe Group to serve as Lead Plaintiff in this consolidated action; (3) approve the Volpe Group's selection of Co-Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: January 22, 2008

Respectfully submitted,

KAHN GAUTHIER SWICK, LLC

By: /s/ Kim E. Miller
Kim E. Miller (KM-6996)
12 East 41st Street, 12th Floor
New York, NY 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

And

KAHN GAUTHIER SWICK, LLC
Lewis S. Kahn
650 Poydras St., Suite 2150
New Orleans, Louisiana 70130
Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for the Volpe Group and Proposed Co-Lead Counsel for the Class*

CARELLA BYRNE BAIN GILFILLAN CECCHI STEWART & OLSTEIN, PC
James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Counsel for the Volpe Group and Proposed Co-Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on January 22, 2008.

/s/ Kim E. Miller
Kim E. Miller